IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:06-CV-254-FL

| | |
|---|---|
| ESTHER J. FRAZIER, | ) |
| Plaintiff/Claimant, | ) ) ) |
| v. | ) **MEMORANDUM AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Claimant Esther J. Frazier seeks judicial review of the Commissioner's denial of her application for Supplemental Security Income payments. After a thorough review of the record and consideration of the briefs submitted by counsel, the Court recommends denying Claimant's Motion for Judgment on the Pleadings [DE-13], and granting Defendant's Motion for Judgment on the Pleadings [DE-16].

## STATEMENT OF THE CASE

On March 3, 2004, Claimant protectively filed an application for Supplemental Security Income payments. She claimed that she became disabled as of March 3, 2004, due to asthma, sarcoidosis, a sleep disorder, a depressive disorder, schizophrenia, polysubstance abuse, and migraine headaches. Claimant's application was denied initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on March 1, 2006. After the hearing, the ALJ issued a decision denying the plaintiff's claims on March 27, 2006. The Appeals Council denied

Claimant's request for review on September 22, 2006, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

**I.  The Standard of Review and Social Security Framework**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d

438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges in her brief that the ALJ erred by: (1) concluding that Claimant did not meet or equal Listing 12.03 in contravention of the evidence; (2) concluding that Claimant has the RFC for medium, unskilled work which was not supported by competent evidence; and (3) finding that Claimant's testimony regarding her pain and

3

limitations was not fully credible. It is the opinion of this Court that the ALJ did not err.

## II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (R. 19). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited her from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the severe impairments of asthma, sarcoidosis, a sleep disorder, a depressive disorder, schizophrenia, and polysubstance abuse. (R. 19). However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 20). Next, the ALJ determined Claimant's RFC by considering all of her subjective complaints and reviewing her medical records, and concluded that she had the ability to perform a wide range of medium, unskilled work activity. (R. 19). At step four, the ALJ found that Claimant did not have any past relevant work. (R. 24). At step five, the ALJ determined that Claimant could perform the medium, unskilled work of a hand packager, photocopy machine operator, and office helper. (Id.). As a result, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of his decision. (R. 25).

## III. Claimant's Testimony at the Administrative Hearing

Claimant testified at her administrative hearing. (R. 308-25). She was 33 years old

4

at the time of the hearing (R. 309), and had a ninth grade education (R. 313). Claimant testified that did not currently smoke, use alcohol, or illegal drugs, but in the past, as recently as one year prior to the hearing, she had used marijuana and crack cocaine. (R. 310). She has never had a driver's license due to financial constraints. (R. 311). Claimant stated that she was currently separated from her husband and that she and her two children were living with Claimant's mother. (Id.). At the time of the hearing, Claimant was receiving both Medicaid and food stamps. (R. 313). Claimant testified that she had previously been employed in 2003 at Hardee's restaurant making biscuits, but left that job after a couple of months. (R. 314). After leaving Hardee's, Claimant worked at a dry cleaners, but was terminated after one week because she was unable to work at a suitable pace. (Id.). Claimant then began working at Wal-Mart as a cashier and in the grocery and cosmetics departments, but had to quit that job after three months due to her asthma. (R. 315).

Claimant testified that she suffers from asthma, but currently has an Albuterol inhaler which she uses as needed. (R. 315). Claimant also testified about her schizophrenic attacks, which have led to hospitalization on several occasions. (R. 315-16). Most recently, claimant was hospitalized at Cherry Hospital for eleven days in January and February of 2006 because she was hearing voices that were telling her to kill herself. (R. 316). Claimant stated that she began hearing the voices when she stopped taking her medication, which she did because she thought she was better. (R. 317). Since being released from Cherry Hospital, Claimant has been on medication and is not hearing any voices. (R. 320). Claimant also testified briefly about two prior hospitalizations for her schizophrenia. (R. 318-19).

5

Claimant testified that she is able to perform some functions of daily living, such as cleaning and cooking for her mother. (R. 321). Claimant also spends time during the day watching television and playing with her children. (R. 320). Claimant does not go to the store alone, but will go if someone is with her. (R. 321). She is able to take care of her personal needs, such as bathing and getting dressed. (Id.). However, Claimant testified that she does have difficulty concentrating and often forgets things while she's doing housework. (R. 323). Claimant is still under a doctor's care for her mental health. (R. 322).

Claimant has received treatment for her sarcoidosis in the past, but is unsure why she has not had any recent medical appointments for this condition. (R. 323). Claimant indicated that her mother takes her to all her appointments and when her mother is working, claimant has difficultly finding transportation. (Id.).

Finally, claimant testified that she is able to walk and used to walk two to three miles often, but now she only walks around the yard because her mother won't allow her to walk far by herself. (R. 324-25).

## IV. The Vocational Expert's Testimony at the Administrative Hearing

Kimberly Engler testified as a VE at the administrative hearing. (R. 325-27). The ALJ posed the following hypothetical:

> [A]ssume a hypothetical claimant the same age, education, and occupational background as the claimant before us today. The hypothetical claimant could lift and carry 50 pounds occasionally, 25 pounds frequently; could stand or walk about six hours total with normal breaks in an eight-hour day. The hypothetical claimant should avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation work spaces and hazards such as unprotected heights and dangerous equipment. The hypothetical claimant could understand and remember simple two-step instructions; perform simple routine and repetitive tasks; interact occasionally with coworkers,

supervisors, members of the public; and adapt to routine changes in the job setting. That is hypothetical claimant number one. Could hypothetical claimant number one perform any jobs in the economies?

(R. 326). The VE responded in the affirmative. (Id.). According to the VE, such an individual could perform the jobs of a hand packager, with a Specific Vocational Preparation (SVP) of 2, and a Dictionary of Occupational Title (DOT) code of 920.587-018, a photocopy operator, with an SVP of 2 and a DOT code of 207.685-014, and an office helper, with an SVP of 2 and a DOT code of 239.567-010. (Id.). Those jobs mentioned by the VE existed in significant numbers in both the local and national economies. (Id.).

The ALJ then posed a second hypothetical to the VE with the same characteristics as hypothetical claimant number one, however hypothetical claimant number two would require "frequent unscheduled breaks due to a combination of physical and non-exertional impairments, and would miss three or more days per month due to symptoms of the exertional and non-exertional impairments." (R. 327). The VE testified that there would not be any jobs available in the competitive work force in the unskilled job based that hypothetical claimant number two could perform. (Id.).

## V. Barbara Tabron's Testimony at the Administrative Hearing

Claimant's mother, Barbara Tabron, also testified at the Administrative hearing. (R. 328-33). Ms. Tabron testified that her daughter is living with her and has been battling schizophrenia since 2002 when she was admitted to Coastal Plain Hospital for her mental problems. (R. 328-29). Prior to being admitted to Coastal Plain, Claimant was living on her own with her two children. (R. 329). However, Ms. Tabron became concerned when Claimant's behavior changed and Ms. Tabron was told that Claimant might be using drugs. (Id.). Ms. Tabron states that Claimant would not answer the door when Ms. Tabron

7

stopped by and that Claimant was also "walking the streets." (Id.). At Ms. Tabron's insistence, Claimant agreed to go to the hospital. (Id.). When Claimant arrived at Coastal Plain Hospital, she had drugs in her system and was hearing voices. (R. 330).

Ms. Tabron further testified that Claimant was admitted to Coastal Plain for a second time in 2003 after getting into a fight with Claimant's niece. (R. 330). Ms. Tabron stated that she noticed the same symptoms which appeared prior to Claimant's 2002 hospitalization. (Id.). Following this second hospitalization, Claimant had no income and could not pay her bills, so she and her children began living with Ms. Tabron. (R. 330-31). While living with Ms. Tabron, in January 2006, Claimant again began showing signs of mental instability and Ms. Tabron took her to the emergency room, where she was ultimately admitted to Cherry hospital. (R. 331). On this occasion Claimant was hearing voices and was acting very defensive toward her mother and children. (R. 331-32). Claimant had also stopped taking her medication six months prior to her admission to Cherry. (R. 332).

Finally, Ms. Tabron testified that Claimant is currently taking medication for her mental health, which Ms. Tabron supervises. (R. 332). Claimant also has regular appointments with a mental health provider. (Id.).

**VI.  The ALJ Did Not Err By Finding that Claimant Did Not Meet Listing 12.03**

Claimant contends that the ALJ erred by failing to find that she meets or equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. Specifically Claimant argues that she meets or equals Listing 12.03, which addresses schizophrenic, paranoid, and other psychotic disorders. To establish the required severity, Claimant must show that she meet the requirements of both sections A and B, or section C as follows:

A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
1. Delusions or hallucinations; or
2. Catatonic or other grossly disorganized behavior; or
3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
   a. Blunt affect; or
   b. Flat affect; or
   c. Inappropriate affect;
   or
4. Emotional withdrawal and/or isolation;
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended durations;
OR
C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Listing 12.03. Claimant notes that she has been admitted to the hospital on three different occasions for hallucinations and catatonic behavior, both of which would be sufficient to meet the criteria for 12.03(A); however Claimant must also meet the criteria under 12.03(B). Claimant is unable to show that she meets any of the criteria of 12.03(B). As the ALJ notes, Claimant has had only "mild restriction of activities of daily living, moderate

9

difficulties in maintaining social functioning, and moderate deficiencies in maintaining concentration, persistence, and pace." (R. 20). The ALJ noted that Claimant had "two-three episodes of decompensation of extended duration;" however, Claimant has failed to show that she meets at least two of the criteria under 12.03(B), as required. (R. 20). The ALJ's findings are supported by the Psychiatric Review Technique and Mental RFC Assessment performed by Ben Williams, Psy.D., on 5 January 2005. (See R. 194-211).

In the alternative, Claimant argues that she meets the criteria under 12.03C because she needs the supportive environment provided by living with her mother to ensure compliance with medication and treatment. Claimant contends that outside this supportive environment, she would be unable to function. Additionally, Claimant contends that she meets the criteria under 12.03C because of her extended hospitalizations. The Court disagrees.

The ALJ found insufficient evidence to establish the presence of the "C" criteria. (R. 20). This finding is supported by Dr. William's assessment. (R. 205). Further, as the ALJ noted, Claimant's mental impairments are improved when she abstains from using illegal drugs and takes prescribed medication. (R. 21). Where drug addiction is a contributing factor material to the determination of disability, and the claimant would not be disabled but for the drug addiction or alcoholism, then the claimant is not entitled to disability benefits. See 42 U.S.C. § 423(d)(2)(C). Anthony G. Carraway, M.D., a state-agency physician who examined Claimant, opined that Claimant's psychosis is likely cocaine-induced. (R. 169). Additionally, on each occasion where Claimant was hospitalized, she was not taking her prescription medication–whether by her own choice, or because her physician had failed to prescribe it. (R. 21, 124, 142, 157, 317, 322). Where impairments can be controlled

with medication, they are not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

Further, while Claimant does live with her mother, there is no indication that this a highly supportive living arrangement, without which Claimant could not function. See Listing 12.03(C)(3). Claimant originally moved in with her mother due to financial hardship. (R. 330-31). Claimant is able to perform many activities of daily living, including her own personal care needs. (R. 21, 321). Additionally, Claimant's mother works outside the home and it would appear that Claimant is often the only adult at home caring for her two children. (See R. 320, 323). Therefore, Claimant's living arrangement with her mother does not appear to be the highly supportive living arrangement contemplated by Listing 12.03(C)(3). Accordingly, substantial evidence supports the ALJ's determination that Claimant does not meet or equal the criteria for Listing 12.03.

**VII. The ALJ Did Not Err by Finding that Claimant Could Perform Medium Work**

Claimant next argues that the ALJ erred by concluding that she retained the RFC to perform a wide range of medium, unskilled work. (R. 20). In determining her RFC, the ALJ considered all of Claimant's symptoms, including her testimony regarding pain, to the extent that such symptoms were consistent with objective medical and other evidence. (Id.). The ALJ also noted his reliance on the requirements of 20 C.F.R. § 416.929 and Social Security Rulings ("SSRs") 96-4p and 96-7p. (Id.). Additionally, the ALJ considered opinion evidence pursuant to 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, and 96-6p. (Id.). The ALJ then proceeded to discuss in detail claimant's medical records, her subjective complaints, and her testimony at the hearing. (R. 20-23). After reviewing all of the evidence, the ALJ found that Claimant's RFC limited her to medium, unskilled work with

11

environmental restrictions. (R. 23). Specifically, the ALJ concluded that:

> [C]laimant can lift and carry 50 pounds occasionally and 25 pounds frequently. She can stand and walk about 6 hours total, with normal breaks, in an 8-hour day. She must avoid even moderate exposure to fumes, odors, gases, and poor ventilation. She must also avoid even moderate exposure to hazards. The claimant is able to understand and remember 2-step instructions. She can perform simple, routine, repetitive tasks. She can interact occasionally with coworkers, supervisors, and members of the public. She is able to adapt to routine changes in the job setting.

(R. 20). Claimant argues that the ALJ's determination that she could perform a wide range of medium work is not supported by substantial evidence, and that Claimant cannot even perform sedentary work on a sustained and continuous basis as evidenced by her several hospitalizations. The Court is not persuaded.

The ALJ meticulously reviewed Claimant's medical history, including medical records and her claims of migraine headaches, asthma, sarcoidosis, a sleep disorder, depressive disorder, and schizophrenia. (R. 19-23). The ALJ concluded that all of these impairments, with the exception of the migraine headaches, were severe impairments. (R. 19). Additionally, the ALJ found an additional severe impairment not alleged by Claimant–polysubstance abuse. (Id.). In light of these severe impairments, the ALJ limited Claimant to medium unskilled work, which consisted of simple, routine, repetitive tasks and no more than two step instructions. (R. 20). Therefore, in accordance with established law, the ALJ considered the entire extent of Claimant's impairments and her symptoms before concluding that she could perform a wide range of medium work. Cf. Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989) (noting that an ALJ must consider a claimant's impairments in concert to determine whether the claimant is disabled under the regulations).

12

Furthermore, the ALJ relied on medical evidence in determining both Claimant's RFC and the modifications appropriate to enable her to perform a wide range of medium work. The ALJ accorded great weight to the opinions of Claimant's treating physicians, David Rabil, M.D. and Lindsey de Guehery, M.D., who treated Claimant on for her sarcoidosis and asthma. (R. 21, 23). Claimant saw Dr. de Guehery on 6 November 2000, for a pulmonary study. (R. 254-55). Claimant returned to see Dr. De Guehery on 8 December 2000 and he noted that Claimant's chest x-rays showed bilateral hilar adenopathy; however, she had no signs of respiratory insufficiency, such as cyanosis, clubbing, or edema. (R. 255). Additionally, on Claimant's breathing had improved with the use of an inhaler. (Id.). On another visit to Dr. Guehery on 4 May 2001, he noted that Claimant was applying for disability due to her sarcoidosis, but he found "no indication for this [patient] to have disability." (R. 264).

Claimant saw Dr. Rabil on 25 July 2005, at the request of her attorney. (R. 231). Dr. Rabil had arranged for Claimant to have another pulmonary function test on 18 July 2005. (Id.). While Dr. Rabil found some symptoms of sarcoid, he saw no evidence of active sarcoid. (R. 232). Dr. Rabil noted that Claimant would not be able to work around dust, fumes, odors, heat, humidity, or second-hand smoke, but stated that Claimant's sarcoidosis was not disabling. (Id.). The ALJ incorporated these environmental restrictions into his RFC determination. (R. 20, 23).

Additionally, the ALJ gave significant weight to the opinions of the state agency medical and psychological consultants, who found that Claimant could perform medium exertional activities with environmental restrictions and had the mental capacity for unskilled work. (R. 23, 194-211, 216-23, 227-30). There was no medical evidence from

13

claimant's treating physicians which contradicted the opinions of these consultants. The ALJ also noted, as discussed above, that when Claimant takes prescribed medication she has no psychotic symptoms and her mental health is stable. (R. 21). Claimant reported to her treating physicians that she does not experience any adverse side effects from her anti-psychotic medication. (R. 22). Accordingly, the ALJ's finding that Claimant has the ability for perform a wide range of medium work is supported by substantial evidence.

**VIII.  The ALJ Did Not Err by Finding Claimant to be Not Fully Credible**

Finally, Claimant argues that substantial evidence does not support the ALJ's findings that her allegations of functional restrictions are not fully credible. The Court disagrees.

In assessing a claimant's credibility, the ALJ must follow a two step process. First the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Next, the ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

14

Here, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statement concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. 23). The ALJ provided specific reasons for his adverse credibility findings. First, the ALJ noted that with respect to Claimant's sarcoidosis and asthma, her pulmonary testing showed normal functioning and these conditions were well controlled with medication. (Id.). Next, the ALJ addressed Claimant's mental impairments, noting that her psychotic episodes were a result of her cocaine and cannabis use and/or her failure to comply with medication prescribed by her mental health physicians. (Id.). Further, the ALJ noted that following each hospitalization, which were all of short duration, Claimant rapidly responded to medication and treatment. (Id.). Additionally, when compliant with medication and treatment, Claimant was able to adequately and independently perform activities of daily living. (Id.); see Hines, 453 F.3d at 565 (noting that testimony regarding daily living activities which is supported by record evidence, can be used to discredit a claimant's testimony regarding pain and symptoms).

The fact that Claimant can point to other evidence in the record that supports her claimed impairments does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays, 907 F.2d at 1456. It is not the responsibility of this Court to determine the weight of the evidence. Id. Here, the ALJ pointed to evidence in the record to support his conclusion that Claimant was not totally credible. Therefore, he satisfied his duty under the applicable regulations and law and did not err in finding claimant not fully credible.

## CONCLUSION

15

Accordingly, because there is substantial evidence to support the findings of the ALJ, the Court **RECOMMENDS** that the claimant's motion for judgment on the pleadings be **DENIED**, the defendant's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 25th day of September, 2007.

DAVID W. DANIEL
United States Magistrate Judge